IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2001 NOV 14  P 3: 20

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

|  |  |
|---|---|
| JAMES G. ROBINSON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. JFM-98-4168 |
| GEO LICENSING COMPANY, L.L.C., et al., | ) |
| Defendants. | ) |
| THOMAS W. GLYNN, et al., | ) |
| Consolidated Plaintiffs, | ) |
| v. | ) Civil Action No. JFM-99-1956 |
| GEOPHONE COMPANY, L.L.C., | ) |
| Consolidated Defendant. | ) |

MEMORANDUM

Plaintiff, James G. Robinson, has moved for leave to file a second amended complaint against Defendant Thomas W. Glynn, Consolidated Plaintiff Glynn Scientific, Inc. ("GSI") and Consolidated Defendant Geophone Company L.L.C. ("Geophone"). Robinson seeks to add facts to support his previous allegations against Glynn of fraud[1] and violations of 15 U.S.C. § 78(j)(b),

---

[1] In his Second Amended Complaint, Robinson failed to make a demand for judgment of punitive damages on his fraud claim which he had made in his Amended Complaint. Subsequently, he made a motion to amend the Second Amended Complaint to include such a demand. While state

1

17 C.F.R. § 240.10b-5 and Md. Code Ann., Corps. & Ass'ns §§ 11-301, 11-703. Robinson also seeks to add a Count IV that alleges a state law breach of contract claim against Glynn, GSI and Geophone.[2] Robinson's motion for leave to file a second amended complaint will be granted.

I.

In the early 1990's, Glynn invented a signal processing technology called Convolutional Ambiguity Multiple Access ("CAMA").[3] In or near the beginning of 1995, he organized what is now Geophone to build and market a satellite telecommunications system based upon CAMA. Also in 1995, Glynn was first introduced to Robinson by Harvey Lamm, whom Glynn had hired to help find investors for Geophone. According to Robinson, Glynn told him that Geophone would use CAMA to gain an advantage over its competitors. Robinson also claims that Glynn told him that as "Chairman of Geophone and founder and President of GSI, which would perform network, systems, and design engineering services for Geophone, [Glynn] had extensive

---

substantive law governs whether punitive damages will be awarded on Robinson's fraud claim, the Federal Rules of Civil Procedure provide the pleading requirements. Metcalf v. Beverly Health and Rehabilitation Servs., Inc., 32 F.Supp.2d 1307, 1308 (N.D. Fla. 1999). Robinson has met the requirements for pleading fraud pursuant to Fed. R. Civ. P. 9(b) and has specifically stated his claim for special damages in accordance with Fed. R. Civ. P. 9(g). Pl.'s Sec. Am. Compl. ¶¶ 63-69. For these reasons, I consider Robinson's Second Amended Complaint to include a demand for judgment of punitive damages in deciding his motion.

[2] Robinson and Glynn are citizens of Maryland. GSI is a Maryland corporation and Geophone is a Delaware limited liability company with its principal place of business in Baltimore County, Maryland. Maryland law governs this contract claim.

[3] My recitation of the facts is based upon the allegations Robinson has made. Although he is the party that has made this motion, Glynn and GSI's argument is based on the assumption that they would make a motion to dismiss for failure to state a claim if Robinson's motion is granted. If such a motion were made, Robinson would be the non-moving party and would be entitled to have all factual inferences drawn in his favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

engineering expertise and would be a key participant in Geophone's operational success." Pl.'s Sec. Am. Compl. ¶ 13.

In July 1995, Robinson loaned Geophone $1 million to finance a program to develop and test two demonstration terminals that would utilize CAMA (the "field test"). On August 15, 1995, Robinson and Geophone signed a letter of intent setting out the terms of this loan and of a subsequent investment in Geophone by Robinson of up to $24 million. Although the letter of intent was primarily between Geophone and Robinson, Glynn signed the contract on his own behalf and on behalf of GSI with regard to paragraph 1(j). This paragraph states:

> Thomas W. Glynn hereby agrees that he will cause Glynn Scientific, Inc. to provide R&D support (1) for the Development and Field Testing Program on a contract basis on terms and conditions which conform to the budget and chronological activity schedule for all phases of the Development and Field Testing program, and (2) for subsequent development programs of GEO.

In October 1995, the field test occurred. Robinson claims that Glynn told him that the test was successful in that it verified the Geophone demonstration terminals actually transmitted, received and processed CAMA. In fact, the demonstration terminals did not use CAMA. However, Robinson relied on Glynn's representation and loaned Geophone an additional $14 million pursuant to the letter of intent.

In April 1996, Robinson filed suit against Glynn in Maryland state court, alleging breach of fiduciary duty, fraud and conversion, all arising out of Glynn's alleged mismanagement of Geophone funds. In November 1997, the Maryland state court action was settled. Under the settlement agreement, Robinson purchased Glynn's majority interest in Geophone. He invested an additional $3 million in Geophone and agreed to pay Glynn approximately $1 million if and when certain operating milestones were met. Robinson alleges that he entered into this

3

agreement in reliance on "Glynn's repeated and continuing representations that the Geophone System used CAMA." Pl.'s Sec. Am. Compl. ¶ 46. It was not until sometime in 1998 that Robinson had actual notice that the Geophone system did not use CAMA.

Robinson filed his initial complaint in this case on December 22, 1998 and then filed an amended complaint on April 20, 1999. On November 1, 2000, Judge Young stayed all proceedings for a period of 120 days because Glynn had filed a state court action against Geophone's attorney that could have caused a conflict of interest. On March 5, 2001, Judge Young continued the stay for an additional 90 days. On June 11, 2001, I continued the stay of all proceedings until June 30, 2001 after the parties advised me that Geophone was retaining new counsel. On July 9, 2001, Rignal W. Baldwin, Jr. was substituted for Charles S. Fax and Dana M.S. Wilson as Geophone's counsel. On July 12, 2001, Robinson filed this motion for leave to file a second amended complaint.

II.

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend a pleading "be freely given when justice so requires." Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied <u>only when</u> the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 242 (4th Cir. 1999) (<u>quoting</u> <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1989)) (emphasis in original). A delay in bringing a proposed amendment is insufficient reason to deny leave to amend. <u>Id.</u>

Glynn and GSI argue that Robinson's motion should be denied because it is futile. They contend that Count IV would not survive a motion to dismiss for failure to state a claim or a motion for summary judgment on the grounds that the claim is time barred. Glynn and GSI also argue that granting the motion would prejudice them because they did not have notice of the new claim and because it is a collusive suit.

A.

Count IV of Robinson's second amended complaint would survive a motion to dismiss for failure to state a claim upon which relief could be granted. Under Maryland law, "a complaint for breach of contract must 'allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant.'" Yousef v. Trustbank Sav., F.S.B., 568 A.2d 1134, 1137 (Md. Ct. Spec. App. 1990) (quoting Cont. Masonry v. Verdel Constr. Co., 369 A.2d 566 (Md. 1977)). Robinson's second amended complaint alleges with sufficient detail that Glynn, GSI and Geophone all owed Robinson a contractual duty pursuant to the letter of intent dated August 15, 1995 and that all three parties breached their duty to Robinson. The letter of intent is attached as an exhibit to the new complaint.

Glynn and GSI argue that their only obligation pursuant to paragraph 1(j) of the letter of intent was to provide R&D support for Geophone's Development and Field Testing program. They further argue that they provided such support and that it complied with the contract, leaving Robinson with no viable claim. Glynn and GSI's argument relies on a particular interpretation of the letter of intent. However, Robinson has stated a claim if a different, plausible interpretation of the letter of intent is considered. Robinson has alleged that the letter of intent required Glynn

5

and GSI to provide R&D support for a field test of a system based on CAMA. Pl.'s Sec. Am. Compl. ¶ 74. Robinson further alleges that Glynn did not cause GSI to provide and GSI did not provide R&D support for such a system. Id. ¶ 79, 80. Viewing the facts in the light most favorable to Robinson, these allegations are sufficient to state a claim upon which relief could be granted and do not require me to deny Robinson leave to amend on the grounds of futility.

B.

On the present record Count IV of Robinson's new complaint would also survive a motion for summary judgment on statute of limitations grounds. Under Maryland law, "a cause of action for breach of contract accrues, and the statute of limitations begins to run, when the plaintiff knows or should have known of the breach." Vigilant Ins. Co. v. Luppino, 723 A.2d 14, 17 (Md. 1999) (citing Poffenberger v. Risser, 431 A.2d 677 (Md. 1981)). Glynn and GSI argue that Robinson had constructive notice that the field test did not use CAMA in November 1997, when he gained a controlling interest in Geophone. Glynn and GSI contend that Geophone's engineers knew that the field test had not used CAMA and they had become Robinson's agents at that point. In addition, Glynn and GSI argue that Robinson had actual notice that the field test did not use CAMA by May 1998. They contend that Robinson's CPA and confidante, Charles Bauermann, and Geophone's chief engineer, Steve Chen, both told Robinson that the field test did not use CAMA by that time. Under either of their theories, Count IV of the Second Amended Complaint, filed on July 12, 2001, would be time barred under Maryland's three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

1.

There is no doubt that in some instances the knowledge of Geophone's engineers, who had become Robinson's agents, could be imputed to Robinson as their principal even though these engineers acquired the knowledge prior to the commencement of the principal agent relationship. This does not mean that all of the knowledge of Geophone's engineers must be imputed. See Martin Marietta Corp. v. Gould Inc., 70 F.3d 768, 775 (4th Cir. 1995). Under Maryland law, if the interests of Geophone's engineers were adverse to the interests of Robinson at the time their knowledge was acquired, the adverse interest exception would prevent their knowledge from being imputed to Robinson. See id. at 773. At the time that the letter of intent was signed and when Geophone's engineers conducted the field test, they were aligned with Glynn, GSI and Geophone in an adversarial relationship with Robinson. Therefore, the adverse interest exception prevents the imputation of their knowledge to Robinson. See id. at 774 (applying the adverse interest exception to disallow imputation of agent's knowledge to current principal when knowledge was acquired while opposing party was agent's principal).

2.

Despite Glynn and GSI's contentions, it appears from the present record that there is a genuine issue of material fact as to when Robinson had actual notice that the field test did not use CAMA. Glynn and GSI point to a letter from Geophone's general counsel to Geophone's patent counsel on May 29, 1998 as evidence that Robinson through his CPA and confidante, Bauermann, knew that the field test did not use CAMA. Bauermann Dep. at 18-19. This would be more than three years before the second amended complaint was filed. Bauermann did testify that the letter raised the issue to him of whether the field test used CAMA and that he did discuss

7

this fact with Robinson. Id. at 23. However, Bauermann also testified that he did not remember when he first saw the letter or how he received it. When asked specifically whether he saw the letter sometime "during the period of May/June 1998" or whether it was later than that, Bauermann stated that he could not recall. Id. at 20.

Glynn and GSI also claim that Mike Davis, a Geophone engineer, wrote a letter to Robinson in May 1998 telling him that the field test did not use CAMA and that Robinson and Steve Chen, Geophone's chief engineer, then discussed the matter. Chen testified that Robinson did not want to read the letter from Davis and asked Chen to "tell him the essential points in the letter." Chen Dep. at 280. Chen then told Robinson that there was a concern that the field test did not use CAMA. Id. Notably, Chen stated in his deposition that he believed that this conversation took place "close to August of 1998." Id. at 279. This would be less that three years prior to Robinson's filing of his second amended complaint. Supporting Chen's recollection, the record indicates that Chen wrote a follow-up memo dated August 29, 1998 to Bauermann after his conversation with Robinson. Id. at 403-4.

The testimony of Bauermann and Chen is consistent with Robinson's own testimony that he did not learn that the field test did not use CAMA until "around August of '98," Robinson Dep. at 121, 480. Thus, there remains a genuine issue of material fact as to whether Robinson knew or should have known on or before July 12, 1998 that the field test did not use CAMA.[4]

---

[4] Both parties have discussed the issue of whether Count IV of the second amended complaint relates back to Robinson's original complaint. I am not required to reach the issue to decide whether summary judgment would be appropriate. However, it appears that Count IV does satisfy the two-part test required for it to relate back to the initial complaint and, therefore, survive summary judgment. First, there is clearly "a factual nexus between the amendment and the original complaint." Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983) aff'd, 468 U.S. 42

C.

Glynn and GSI make two arguments as to why Robinson's second amended complaint would prejudice them. First, they argue that the second amended complaint is based on an entirely new set of facts and asserts new theories of causation and damages. They claim that this will require them to engage in additional discovery. Second, Glynn and GSI argue that because Geophone is controlled by Robinson, a suit between them is collusive. They claim that "the only possible purpose of Robinson's claim against Geophone is to attempt to permit Geophone to consent to a judgment against it in an amount that Robinson directs, with a hope to ultimately use it to continue his legal assault on Glynn." Opp'n Mem. at 16.

1.

An examination of the original complaint, the amended complaint and the second amended complaint reveals that, for the most part, the complaints contain a consistent set of facts that have merely been amplified over time. It is acceptable to amend a complaint to add additional facts in order "to amplify a previously alleged claim." Donovan v. Porter, 584 F.Supp. 202, 207 (D. Md. 1987). Even the facts that most specifically relate to the new claim alleged by Robinson have already been explored by Glynn when he took Robinson's deposition. In fact, Glynn questioned Robinson about the letter of intent and events related to it prior to Robinson's attempt to add Count IV. Furthermore, a new theory of recovery is insufficient reason to disallow amendment. Fed. Leasing v. Amperif Corp., 840 F.Supp. 1068, 1072 (D. Md. 1993).

If Glynn and GSI contend that additional discovery will be required, they may move for

---

(1984). Second, Glynn and GSI "had notice of the claim and will not be prejudiced by the amendment." Id. This will be discussed in greater detail in Section II.C of this opinion.

an extension of the present discovery deadline of December 21, 2001. The trial is not scheduled to begin until July of 2002. Accordingly, any additional discovery that is required will not prejudice Glynn or GSI. See Johnson, 785 F.2d at 510 ("It is true that prejudice can result where a proposed amendment raises a new legal theory . . . but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial."); see also Genentech, Inc. v. Abbott Labs., 127 F.R.D. 529 (N.D. Cal. 1989) (finding no undue prejudice from amendment even though opposing party claimed the amendment "would require it to depose numerous witnesses across the country who have been previously questioned and would necessitate additional document searches and written discovery"); Cuffy v. Getty Ref. & Mktg. Co., 648 F.Supp. 802, 806 (D. Del. 1986) ("[P]rejudice means that the non-moving party 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'") (citation omitted).

2.

In support of their collusion argument, Glynn and GSI rely on Reyes v. Prince George's County, 380 A.2d 12 (Md. 1977). There, taxpayers challenged the proposed issuance and sale of revenue bonds by Prince George's County. The bond proceeds were to be loaned to Washington National Arena Limited Partnership. The Partnership had hired lawyers to find plaintiffs and bring suit against it so that it could obtain a ruling as to the legality of the proposed bond issuance and sale. Id. at 14-15. The Maryland Court of Appeals found the suit to be collusive, focusing on the fact that one "party [paid] the counsel fees for his phantom adversary" and that "the true object of this suit [was] to affect third parties." Id. at 15.

Count IV of Robinson's second amended complaint against Geophone, Glynn and GSI is distinguishable from <u>Reyes</u> and is not collusive. As the Maryland Court of Appeals points out in <u>Reyes</u>: "If the real and primary object of the suit is to redress the grievance of the plaintiff and there is an actual controversy, involving real and substantial rights between the parties to the record, the suit (will) not be dismissed." <u>Id.</u> (quoting <u>Fitzjarrel v. Boyd</u>, 91 A. 547, 548 (Md. 1914)). The second amended complaint makes clear that there is an actual controversy between Robinson and Geophone. Robinson and Geophone entered in a contractual relationship on August 15, 1995 when the letter of intent was signed. Robinson alleges that Geophone has not fulfilled its obligations under this contract. He now seeks to recover for this alleged breach. The proper inquiry is whether Robinson's claim involved the vindication of real and substantial rights, not whether the parties "actually disagree or desire contrary results." <u>Id.</u> at 17 n.4, <u>Rowe v. Chesapeake and Potomac Tel. Co. of Md.</u>, 466 A.2d 538, 545 (Md. Ct. Spec. App. 1983) ("[T]here is no requirement that adverse parties to a suit actually disagree or desire contrary results.'") (citation and quotation marks omitted). Here, on their face the rights Robinson seeks to vindicate are "real and substantial."

In claiming that Robinson will be paying the legal fees of both sides and has brought suit only to affect third parties, Glynn and GSI attempt to treat Robinson and Geophone as a single entity. Such treatment is not appropriate. Geophone is organized as an LLC and Robinson is a member of the LLC. Robinson, as Geophone's majority interest holder, owes a fiduciary duty to Geophone's minority interest holders. See <u>Froelich v. Erickson</u>, 96 F.Supp.2d 507, 526 (D. Md. 2000) <u>aff'd</u>, 246 F.3d 664 (4th Cir. 2001). Glynn and GSI have made no showing that Robinson has not taken this obligation seriously. In addition, Robinson, as a member, is specifically

11

permitted by statute to bring suit to enforce a contract he made with Geophone.[5] Del. Code Ann. tit. 6, § 18-107 ("[A] member or manager may lend money to . . . a limited liability company and, subject to other applicable law, has the same rights and obligations with respect to . . . such matter as a person who is not a member or manager."), Md. Code Ann., Corps. & Ass'ns § 4A-405 ("Except as provided in the operating agreement, a member may lend money to and transact business with the limited liability company and, subject to other applicable law, has the same rights and obligations with respect to the transaction as a person who is not a member."); cf. Commonwealth United Corp. v. Rothberg, 143 S.E.2d 741, 742 (Ga. 1965) ("The fact that the plaintiff in the action sought to be enjoined is a majority stockholder of the defendant corporation in that action did not operate to make the action a collusive one, or the same person both plaintiff and defendant."), Llewellyn v. Queen City Dairy, 48 A.2d 322, 326 (Md. 1946) ("Because of the doctrine of corporate entity, the rule that a person cannot sue himself does not apply as between a corporation and its stockholders or members, and they may litigate antagonistically to each other.").

A separate order granting Robinson's motion for leave to file a second amended complaint is being entered herewith.

Date: November 14, 2001

J. Frederick Motz
United States District Judge

---

[5] Geophone is a Delaware LLC and the contract claim is governed by Maryland law. Both states have nearly identical provisions regarding a member's ability to sue an LLC.